Trousdale *v.* Maxwell.

6L 161
15L 616

W. C. TROUSDALE *et al. v.* W. H. MAXWELL *et al.*

CHANCERY PLEADINGS AND PRACTICE. *Ejectment. Transfer of litigation from court of law to equity.* A bill to enjoin an ejectment suit and to transfer the litigation to the chancery court, which shows that the complainants claim the land, as sub-vendees, under a sale made by order of the county court upon the petition of a guardian against his infant ward, and asks, in the event the sale be declared void, that complainants be subrogated to the rights of the original purchaser for so much of the purchase money as was expended for the benefit of the ward or paid to her, and for a recovery against the guardian for the residue, contains equity and cannot be dismissed on motion; but the court ought not to take jurisdiction of the legal contest nor enjoin the prosecution of the suit at law, except upon the terms of giving judgment at law to be dealt with as the court might order.

---

FROM JACKSON.

---

Appeal from the Chancery Court at Gainsboro. W. G. CROWLEY, Ch.

J. P. MURRAY & SON for complainants.

R. A. COX, A. A. SWOPE and W. H. DILLARD for defendants.

COOPER, J., delivered the opinion of the court.

The bill and amended bill were, on motion of the defendants, dismissed by the chancellor for want of equity on their face.

The bill was filed on May 21, 1877, is deficient in dates, and vague in its statements. It appears, however, that on the 6th of November, 1849, Joseph

11—VOL. 6.

Burgess and wife conveyed a tract of land by deed to Mary S. Burgess, now the wife of the defendant, W. H. Maxwell. She was then an infant, for whom Geo. Holloman, the other defendant, was at some time guardian. While acting as guardian, but at what time does not appear, Holloman, as guardian, seems to have instituted a suit in the county court against his ward for the sale of the land, process being served upon her, and a guardian *ad litem* appointed to represent her. These proceedings, the amended bill says, "were partly based on the act of 1789, ch. 39, and in addition, the land was sought to be sold to support the ward, because her interest required the sale, and to prevent a multiplicity of suits." Such steps were taken that, under the orders of the court, the land was sold, the sale confirmed, and title divested out of the ward by decree and vested in the purchaser. The complainants are sub-vendees under the purchaser. The purchase money was paid, and came to the hands of the defendant Holloman as guardian. He used some of the money for the benefit of his ward, and paid her a part. After the majority of the ward, she brought suit against her guardian for the residue. Afterwards, during the progress of the suit, she and her husband, Maxwell, with whom she had intermarried, combined and confederated with Holloman, agreed that he might retain the money not used for the wife's benefit or paid her, and brought an action of ejectment at law against complainants to recover the land. The records of the county court, including the record in the suit for the sale of the

land, were destroyed by fire in the burning of the court-house on August 14, 1872, and defendants Maxwell and wife, says the bill, "seeking to take advantage of the destruction of the records," have now an action of ejectment pending for the recovery of said land, "which is for trial at the present term of the circuit court." The prayer of the original bill is, that the lost record of the county court be set up, and the right of complainants be declared, their defense at law being embarrassed. The amended bill prays, in addition, that if the sale under the decree of the county court be held void, a lien be declared on the land in favor of the complainants for the purchase money and interest, and if not thus decreed, that they have a recovery against Mary S. Maxwell for so much of the purchase money as she received, and against Holloman for the amount in his hands.

It does not appear whether the proceedings in the county court for the sale of the land were commenced before or after the Code went into operation. The act of 1789, ch. 89, sec. 5, so far as it conferred jurisdiction upon the county court to sell the land of an infant, on the application of the guardian, for the payment of debts, seems to have been repealed by the act of 1835, ch. 6, secs. 3 and 5. The county court has never at any time been authorized to sell an infant's land because for his interest, or in order to support him, or to prevent a multiplicity of suits. The provisions of the fifth section of the act of 1789, ch. 39, were re-enacted in the Code, sec. 2516 *et seq.* The chancellor may have sustained the motion to dis-

miss on this branch of the case upon the ground that the bills did not affirmatively show a state of facts from which he could see that the record of the county court suit could be of any service to the complainants. The reference in the bill to the act of 1789, might be fairly construed to imply that the proceedings were before the Code. In that view, it was not the case of a defective statement of an equity, but a statement of facts insufficient to raise an equity.

If, however, there is any equity in the bill, the motion was improperly sustained. There is equity in that part of the bill which seeks to hold Maxwell's wife for so much of the purchase money under the county court sale as came to the hands of the ward, or was properly appropriated for her benefit, and to hold the guardian personally liable for the residue of the purchase money paid, if the sale be set aside. The chancellor seems to have thought that the right of recovery could only be in the original purchaser, who was not before the court. But we have held that the party ejected by the infant would be entitled, by right of subrogation, to the extent of the purchase money paid by him with interest, to the original purchase money, and to have the amount used for the infant's benefit, or paid to the infant, declared a lien upon the land: *Jones* v. *Kenna*, 4 Lea; *Starkey* v. *Hammer*, 1 Baxt., 438.

The object of this bill is to enjoin an ejectment suit, and transfer the litigation to the court of chancery. The rule in such cases is, that equity will not take jurisdiction on the legal questions, nor grant the

injunction, unless the party seeking its aid will close the legal contest by giving judgment in the action, with a stay of execution, the judgment to be dealt with as, the court of equity may thereafter order: *Ham* v. *Schuyler,* 2 Johns. Ch., 140; *Turner* v. *Am. Baft. Union,* 5 McLean, 344; *Carroll* v. *Sand,* 10 Page, 298; *Johnston* v. *McArthur,* 64 N. C., 675. The reason is, that by coming into equity for that purpose, the complainant concedes that he has no defense which he can make effectual at law, and it would be inequitable to permit him to stay the defendant's legal redress by a bill which he may at any time dismiss.

The chancellor's decree will be reversed and the cause remanded for proceedings, but with directions to the chancellor to dissolve the injunction and dismiss the bill so far as it contests the right of the defendants to recover at law, unless the complainants will allow judgment to go in the action at law, the judgment to be subject to the future order of the chancery court, with a stay of execution in the meantime. The costs of this court will be paid, one-half by the complainants and the other half by the defendants.